UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
TALMADGE HANCOCK )
)
  and )
)
OVEDA HANCOCK, )
)
          Plaintiffs, )
)
        v. )     Civil Action No. 05-0307 (PLF)
)
HOMEQ SERVICING CORP., *et al.*, )
)
       Defendants. )
_____)


<u>OPINION</u>

      Plaintiffs Talmadge and Oveda Hancock are executors of the estate of their late

mother, Carolyn Hancock.  Plaintiffs allege that defendants took advantage of their elderly and

unsophisticated mother and, through fraud and forgery, caused Carolyn Hancock to take out a

$55,000 mortgage on her real property in October 1994.  Plaintiffs filed the instant action in the

Superior Court of the District of Columbia on January 6, 2005, and defendants removed it to this

Court on February 9, 2005.  Plaintiffs seek injunctive and declaratory relief from the foreclosure

of the real property, rescission of the contract, and damages.

      Defendants Valley Title Company and Barry Blank filed a motion for summary

judgment, and defendants Bank of New York and HomEq Servicing Corp. filed a separate

motion for summary judgment.[1]  The Court carefully considered the arguments of the parties

---

      [1]     The papers submitted in connection with these motions include: Defendants Barry
Blank and Valley Title Company's Motion for Summary Judgment ("Valley Title Mot.");
Plaintiffs' Response to Defendants Barry Blank and Valley Title's Motion for Summary

and, by Order and Judgment of March 30, 2007, the Court granted the motions of all defendants

for summary judgment and entered judgment for defendants on all counts.  This Opinion

explains the reasoning underlying that Order.

## I. BACKGROUND

When Carolyn Hancock took out a mortgage on her home and the loan was

consummated in October 1994, Carolyn Hancock was a 78 year old retired keypunch operator

living at 714 16th Street, S.E., Washington, D.C.  See Complaint ("Compl.") ¶¶ 16, 18.[2]  Carolyn

Hancock managed her own financial affairs and had owned her home since the 1970s.  See id.

¶ 17.  At the time of the loan, both plaintiffs -- Carolyn Hancock's adult children -- were living

with Carolyn Hancock at 714 16th Street, S.E.  Plaintiff Talmadge Hancock had been

permanently disabled since a work-related injury in 1978, and plaintiff Oveda Hancock was

employed as a transcriber and conference reporter.  See id. ¶ 16.  Plaintiffs allege that Carolyn

Hancock depended on her children for transportation and rarely left the house without them.  See

id. ¶ 19.

---

Judgment ("Valley Title Opp."); Defendants Barry Blank and Valley Title Company's
Memorandum in Reply to Plaintiffs' Opposition to Motion for Summary Judgment ("Valley
Title Reply"); Motion for Summary Judgment by HomEq and Bank of New York ("HomEq
Mot."); Plaintiffs' Response to Defendants HomEq and Bank of New York's Motion for
Summary Judgment ("HomEq Opp."); Reply Brief in Support of HomEq Servicing Corp. and
Bank of New York, Trustee's Motion for Summary Judgment ("HomEq Reply"); Supplemental
Brief of HomEq Servicing Corp. and Bank of New York ("HomEq Supp. Brief"); Plaintiff's
Response to Defendants Bank of New York and HomEq's Supplement Brief ("HomEq Supp.
Opp."); and Reply Brief in Support of HomEq Servicing Corp. and Bank of New York's Motion
("HomEq Supp. Reply").

[2]      Plaintiffs' Complaint came to this Court as part of the Notice of Removal from
the Superior Court of the District of Columbia. See Notice of Removal at Ex. A ("Complaint").
In this Opinion, however, the Complaint is cited separately to distinguish it from other exhibits
submitted as part of the file created in the Superior Court.

In October 1994, in response to a door-to-door solicitation, <u>see</u> Compl. ¶ 2, Carolyn Hancock took out a mortgage on her house in the amount of $55,000, at an interest rate of 11.637%, with monthly payments of $555.  <u>See id.</u> ¶ 29.  Plaintiffs allege that Carolyn Hancock tended to keep her personal financial business to herself, and plaintiffs therefore were not aware of the loan at the time.  <u>See id.</u> ¶ 20; Response of the Plaintiffs to Defendants HomEq and BONY Statement of Undisputed Facts ("Pl. Facts") ¶ 6.  Plaintiffs state that their only contemporaneous recollection of the loan dates from December 15, 1994, when a messenger delivered a white plastic case of papers labeled "Valley Title" to Carolyn Hancock's house. Plaintiff Talmadge Hancock received the package and immediately gave it to his mother without examining its contents.  <u>See</u> Compl. ¶ 20.

From October 1994 until early 1997, Carolyn Hancock regularly made payments on the loan.  <u>See</u> Pl. Facts ¶ 14.  In March 1997, Carolyn Hancock became seriously ill, and during that month asked her son, plaintiff Talmadge Hancock, to make a mortgage payment for her by Western Union.  <u>See</u> Compl. ¶ 22.  Talmadge Hancock made the payment as requested by his mother and understood at the time that the payment was being made on a loan secured by his mother's house.  <u>See</u> Pl. Facts ¶¶ 15-17.  Carolyn Hancock died on March 24, 1997, and her children were appointed executors of her estate.  The only asset of the estate was the property at 714 16th Street, S.E.  <u>See</u> Compl. ¶ 23.

The week after Carolyn Hancock died, plaintiff Talmadge Hancock called The Money Store -- who held the note on the loan at the time, <u>see</u> Compl. ¶ 51 -- to "ask for more information." <u>Id.</u> ¶ 24.  It is unclear from the complaint what, if any, information plaintiffs received from this and other inquiries they made to The Money Store.

From the time of Carolyn Hancock's death in March 1997 until plaintiff Oveda Hancock declared bankruptcy on November 19, 1999, plaintiffs continued to make payments on the loan.  See Compl. ¶¶ 52, 53.  In January 1999, shortly after plaintiff Oveda Hancock's bankruptcy and nearly two years after first inquiring of The Money Store about the loan, plaintiffs went to the D.C. Recorder of Deeds and obtained a copy of the Deed of Trust, signed by Carolyn Hancock on October 7, 1994.  See id. ¶ 25.  The deed revealed that the beneficiary of the loan was Bankers First Mortgage Co., and the notary was defendant Barry Blank.  See id. ¶ 25.  In addition to the Deed of Trust, plaintiffs obtained other documents, including a copy of the HUD-1 form, which itemized "settlement charges" of $26,357.05, including payments to Carolyn Hancock's creditors.  The HUD-1 also listed the fees and taxes assessed with respect to the loan, and a disbursement of $17,220.90 to Carolyn Hancock.  See id. ¶¶ 33, 34.  The HUD-1 settlement document noted that the "place of settlement" was in Owings Mills, Maryland, a location which, plaintiffs assert, would have been very difficult for Carolyn Hancock to reach on her own, since she did not have a driver's license and rarely traveled without the help of her children.  See id. ¶¶ 18, 31; Notice of Removal Ex. C, D.C. Superior Court Motion for Preliminary Injunction ("Super. Ct. Mot. PI") at Ex. D (HUD-1 form).

Plaintiffs obtained several other documents from the District of Columbia Recorder of Deeds in January 1999.  Among them was an agreement by which Carolyn Hancock was to receive $8,000 on the date of settlement as a "personal loan," to be repaid from the proceeds of the loan, in return for her agreeing not to rescind the loan.  See Compl. ¶ 35.  Plaintiffs also had in their possession as of January 1999 a signed addendum to the HUD-1 form, signed name affidavits, a signed form entitled "Notice of Right to Cancel," and a signed Truth in Lending Disclosure form.  See id. ¶¶ 36-38, 40, 44.  Plaintiffs also discovered that on October 7,

1994, the loan was assigned to Industry Mortgage, which in turn assigned it to The Money Store on October 17, 1994.  See id. ¶¶ 49-50; Super. Ct. Mot. PI at Ex. S (assignment of loan to The Money Store).

Plaintiffs continued to make sporadic payments on the loan until December 18, 2001, after which they made no further payments.  See Pl. Facts ¶ 23.  As noted, Oveda Hancock declared bankruptcy on November 19, 1999.  Talmadge Hancock declared bankruptcy on March 26, 2002.  See Compl. ¶ 55.

In January 2003, while moving a trunk in the garage to protect it from inclement weather, plaintiff Talmadge Hancock came across a file containing his mother's papers.  See Compl. ¶ 56.  Among the papers, he discovered a copy of a check for $8,000 (dated October 14, 1994 rather than the date of settlement, October 7, 1994) and another check made out to Carolyn Hancock for $12,038.78.  See id. ¶ 57.  He also found an unwitnessed version of the Adjustable Rate Note and an unnotarized version of the Deed of Trust.  See id. ¶¶ 57- 58.

After discovering the documents in the trunk, plaintiffs consulted with an attorney and a forensic document expert.  See Compl. ¶ 60.  The document expert compared Carolyn Hancock's signature on the Adjustable Rate Note found in the trunk with the copy of the Adjustable Rate Note, the Deed of Trust and other documents on file with the D.C. Recorder of Deeds.  In a report dated June 5, 2003, the document expert concluded that Carolyn Hancock's signature on the version of the Adjustable Rate Note held by the D.C. Recorder of Deeds was "probably not genuine."  Id. ¶ 64.  She also compared the Deed of Trust found in the trunk with the Deed of Trust obtained from the D.C. Recorder of Trusts and concluded that the filed version had "been altered after Carolyn E. Hancock signed it."  Id. ¶ 63.

On December 24, 2003, HomEq demanded the unpaid principal balance of $53,324.85 plus late fees, attorneys' fees, and other fees totaling $29,908.72, by January 26, 2004, or HomEq would foreclose on the property.  See Compl. ¶ 65.  Plaintiffs were unable to pay the amount demanded by HomEq.  On November 29, 2004, plaintiff Talmadge Hancock filed for bankruptcy for the third time.  See id. ¶ 68.  The next day, HomEq notified plaintiffs that foreclosure would take place on December 14, 2004.  See id. ¶ 68.  On December 13, 2004, plaintiff Talmadge Hancock filed a motion for emergency injunctive relief in his bankruptcy proceeding to enjoin the pending foreclosure.  The motion was denied.  See id. ¶ 70.  Plaintiffs filed the instant complaint in the Superior Court of the District of Columbia on January 6, 2005, and it was removed to this court on February 9, 2005.  See Notice of Removal.

Plaintiffs' complaint contains eleven counts, some against all defendants -- Valley Title, Barry Blank, HomEq, and Bank of New York -- and others against only certain of the defendants.  The claims asserted are:  (1) violation of the District of Columbia Consumer Protection Act (Count I); (2) common law fraud (Count II); (3) violation of the District of Columbia usury statute (Count III); (4) conversion (Count IV); (5) violation of the District of Columbia Mortgage Lenders and Brokers Act (Count V); (6) breach of fiduciary duty -- Bankers First Mortgage (Count VI); (7) breach of fiduciary duty -- Valley Title (Count VII); (8) conspiracy to defraud (Count VIII); (9) aiding and abetting the defrauding of Carolyn Hancock (Count IX); (10) injunctive and declaratory relief (Count X); and derivative claims against various defendants (Count XI).[3]  Valley Title was the mortgage closing company, and

_____

[3]      An entity called Bankers First Mortgage is named as a defendant in seven of the eleven courts.  Counts III (usury), V (violation of D.C. Mortgage Lenders and Brokers Act), and VI (breach of fiduciary duty) are brought solely against Bankers First.  Bankers First Mortgage, however, has never been served with process.  See Joint Report Pursuant to Local Civil Rule

Barry Blank was the notary at the closing for Carolyn Hancock's loan.  As noted, the loan is currently held by The Money Store, which is part of HomEq, and it is serviced by Bank of New York in a pooling agreement.  See Compl. ¶ 146.  The Court has before it two motions for summary judgment with respect to all claims -- one filed by defendants Valley Title and Barry Blank, the other by defendants HomEq and Bank of New York.

## II.  DISCUSSION

### A.  Legal Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits or declarations, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law. . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Holcomb v. Powell, 43 F.3d 889, 895 (D.C. Cir. 2006) ("A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination.") (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  When considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."  Anderson v. Liberty

---

16.3.  The Court, therefore, does not address Counts III, V and VI, except insofar as Counts III and V are asserted derivatively against defendants who have been properly served.  See infra at 22-24.

Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Wash. Post Co. v. U.S.  Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).

On a motion for summary judgment, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, deposition excerpts, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor.  Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  To defeat summary judgment, the non-moving party must have more than "a scintilla of evidence to support [its] claims." Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001); see Ben-Kotel v. Howard University, 319 F.3d 532, 536 (D.C. Cir. 2003).

### B.  Applicable Statutes of Limitations

All of plaintiffs' claims are based on District of Columbia law, either statutory or common law, and all parties agree that the statute of limitations for each of plaintiffs' claims therefore is governed by D.C. Code § 12-301.  See Valley Title Mot. at 9; Valley Title Opp. at 10.  Plaintiffs concede that the most relevant provisions are Section 12-301(3), which arguably governs their conversion claim, and Section 12-301(8), which governs their remaining claims.

See Valley Title Opp. at 10.[4]   The relevant provisions of the D.C. Code provide:

> Except as otherwise specifically provided by law, actions for the
> following purposes may not be brought after the expiration of the
> period specified below from the time the right to maintain the
> action accrues:
>
> > (3) for the recovery of damages for an injury to real or personal
> > property  -- 3 years . . .
> >
> > (8) for which a limitation is not otherwise specially
> > prescribed  -- 3 years . . . .

D.C. CODE § 12-301.  As a result, all of plaintiffs' claims against Valley Title, Barry Blank,

HomEq, and Bank of New York are subject to a three-year statute of limitations.

The District of Columbia Code provides that the statutory period begins to run

"from the time the right to maintain the action accrues."  D.C. CODE § 12-301.  When the fact of

an injury is not immediately apparent, however, or when the facts giving rise to a claim have

been concealed by a defendant, District of Columbia law provides that the limitations period

does not begin to run until the plaintiff has actual or inquiry notice of the facts giving rise to the

claim.  See In re Estate of Delaney, 819 A.2d 968, 982 (D.C. 2003) (the cause of action accrues

"when the plaintiff has either actual notice of her cause of action or is deemed to be on inquiry

---

[4]     Plaintiffs initially invited the Court to apply the longer statutes of limitations
found in subsections (1) or (6) of Section 12-301.  Subsection (1) provides a fifteen year statute
of limitations "for the recovery of lands, tenements, or hereditaments."  D.C. CODE § 12-301(1).
Subsection (6) provides, in relevant part, a twelve-year statute of limitations for suit on an
"instrument under seal."  D.C. CODE § 12-301(6).  Neither provision applies to plaintiffs' claims,
however.  Plaintiffs' claims do not seek enforcement of rights created by contract, so Section 12-
301(6) does not apply.  Similarly, merely because the underlying contract happens to be a
mortgage does not make the "purpose" of the action "the recovery of lands" under Section 12-
301(1).  Rather, that subsection serves to establish the period of "actual, exclusive, continuous,
open and notorious possession" required to obtain a valid title to land in the District of
Columbia.  Johnson v. Chase Manhattan Mortg. Corp., Civil Action No. 04-344, 2006 U.S. Dist.
LEXIS 60760, at *8-9 (D.D.C. Aug. 28, 2006).

notice because if she had met her duty to act reasonably under the circumstances in investigating matters affecting her affairs, such investigation, if conducted, would have led to actual notice."). As recognized by the D.C. Circuit, under the District of Columbia's "discovery rule," "a claim does not accrue until a plaintiff knows, or by the exercise of reasonable diligence should know, of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing." Bradley v. Nat'l Assoc. of Secy's Dealers Dispute Resolution, Inc., 433 F.3d 846, 850 (D.C. Cir. 2005) (citing Bussineau v. President and Dirs. of Georgetown Coll., 518 A.2d 423, 435 (D.C. 1986)). The discovery rule is an equitable doctrine that protects injured parties from relinquishing claims of which they could not have been aware at the time the injury occurred. See, e.g., Jones v. Rogers Mem. Hosp., 442 F.2d 773, 775 (D.C. Cir. 1971) (A defendant's interest in repose is "qualified by the consideration of elementary fairness crystallized in the discovery rule.").

It is not necessary under the discovery rules that a party have notice of its specific legal claims: "the focus of the rule is on when [the plaintiff] gained general knowledge [that she had been injured], not on when she learned of the *precise* legal remedies [for the injury]." In re Estate of Delaney, 819 A.2d at 982 (quoting East v. Graphic Arts Indus. Joint Pension Trust, 718 A.2d 153, 157 (D.C. 1998)). Whether a plaintiff has exercised reasonable diligence in investigating the matter is a highly fact-bound issue requiring an evaluation of all of the circumstances, including the nature of the relationship between the plaintiff and defendant. See Ray v. Queen, 747 A.2d 1137, 1142 & n.6 (D.C. 2000); Diamond v. Davis, 680 A.2d 364, 372 (D.C. 1996). The existence of a fiduciary relationship between a plaintiff and defendant, if one exists, "does not alter the rule that the limitations period [begins] to run as soon as the [plaintiff is] on inquiry notice." Ray v. Queen, 747 A.2d at 1142 & n.6. Assuming that the discovery rule applies in this case, the issue is when Carolyn Hancock or the executors of her estate, the

plaintiffs, were put on notice of the wrongdoing they allege.  See Bussineau v. President and Dirs. of Georgetown Coll., 518 A.2d at 435.

Plaintiffs filed suit in the Superior Court of the District of Columbia on January 6, 2005.  See Notice of Removal.  Therefore, in order for plaintiffs' claims not to be barred by the three-year statute of limitations, they had to have had either actual or inquiry notice of the facts underlying each claim -- or the injury they suffered giving rise to the claims -- no earlier than January 6, 2002.  Any claims for which plaintiffs or Carolyn Hancock had notice prior to that date must be dismissed as time-barred.  See D.C. CODE § 12-301.  The Court finds that Carolyn Hancock and/or the plaintiffs had actual or inquiry notice for each of their claims prior to January 6, 2002.  As a result, the Court must grant defendants' motions for summary judgment on all counts.

### C. Plaintiffs' Claims against Valley Title and Barry Blank

Plaintiffs bring six claims against Valley Title.  Count I alleges violations of the District of Columbia Consumer Protection Act, D.C. Code § 28-3901, et seq., see Compl. ¶¶ 75-80; Count II alleges common law fraud, see id. ¶¶ 81-86; Count IV alleges conversion, see id. ¶¶ 94-100; Count VII alleges breach of fiduciary duty, see id. ¶¶ 121-127; Count VIII alleges conspiracy to defraud, see id. ¶¶ 128-134; and Count IX alleges aiding and abetting fraud, see id. ¶¶ 135-139.  Barry Blank is also named as a defendant in Counts VIII and IX.  Valley Title and Barry Blank have moved for summary judgment on all claims.  See Valley Title Mot. at 1. Defendants argue that each of plaintiffs' claims against them is barred by the District of Columbia's three-year statute of limitations.  The Court agrees.

1.  Count I: District of Columbia Consumer Protection Act; Count II: Common Law Fraud; Count IV: Conversion; Count VII: Breach of Fiduciary Duty

a.  Claims Based on the Invalidity of the Loan

Plaintiffs' claims alleging violation of the District of Columbia Consumer Protection Act ("DCCPA"), D.C. Code § 28-3901 *et seq.* (Count I), conversion (Count IV), and breach of fiduciary duty (Count VII) all rely in part on plaintiffs' assertion that Carolyn Hancock's signatures were forged on various loan documents.  See Compl. ¶ 79 (alleging violation of the District of Columbia Consumer Protection Act based on forged signatures), ¶ 97 (alleging conversion based on forged signatures), ¶ 117 (alleging breach of fiduciary duty based on forged signatures).

In alleging that Carolyn Hancock's signature was forged on the loan documents, plaintiffs argue that she never in fact took out a mortgage on her home and that no loan was ever properly consummated.  But if the loan was fraudulently consummated because someone forged Carolyn Hancock's signature, both the injury and the evidence of wrongdoing should have been apparent to Carolyn Hancock at or around the time she received the proceeds of the loan, paid off over $20,000 in outstanding debts, and began making monthly payments on the loan.  See Valley Title Mot. at 4.  Why would she do any of these things if there were no loan agreement that she had knowingly signed and if she had not received proceeds of the loan which she then was obligated to repay?  If someone forged Carolyn Hancock's signature, the statute of limitations for the claims set forth in Counts I, IV and VII therefore began to run when Carolyn Hancock had notice of the loan's existence -- in or around October 1994.  As a result, the statute of limitations on the claims expired in approximately October 1997, and each of these claims therefore is time-barred.  See D.C. Code § 12-301(3) and (8); Bussineau v. President and Dirs.

12

of Georgetown Coll., 518 A.2d at 435.

Plaintiffs' alternative theory is that Carolyn Hancock did sign the loan documents, but that defendants had her "sign loan documents in her home in Washington D.C., while representing after the fact that the [c]losing took place at Valley Title in Baltimore County, Maryland," an unlawful trade practice in violation of the DCCPA, D.C. Code § 28-3904(e) and (f). Compl. ¶ 79. There is no allegation, however, that Carolyn Hancock did not see the Deed of Trust and other loan documents or have them in her possession at the time of the loan, regardless of where the closing actually took place. Her possession of those documents, particularly the Deed of Trust -- which noted that the place of settlement was in Maryland -- constituted notice of any claim regarding this alleged misrepresentation.

Nevertheless, even if the Court were to assume that Carolyn Hancock did not have the Deed of Trust in her possession in October 1994, this aspect of plaintiffs' DCCPA claim still is time-barred because plaintiffs -- Carolyn Hancock's adult children -- acquired the Deed of Trust and other loan documents in January 1999. See Compl. ¶ 25.[5] Plaintiffs concede that in January 1999 they were aware that in October 1994 Carolyn Hancock could not drive and tended to rely on plaintiffs for transportation. It follows that plaintiffs must have known when they obtained copies of the Deed of Trust and other loan documents from the Recorder of Deeds that Carolyn Hancock therefore was unlikely to have been present in Baltimore County without

---

[5]     Plaintiffs concede that when they originally received and reviewed the Deed of Trust and other documents obtained in January 1999 they were "troubled" by them. See Pl. Facts ¶¶ 25, 26. This concession itself suggests that in January 1999 plaintiffs had "general knowledge" of the possible injury even if they were not yet aware of a specific legal claim or theory of relief. That is all the notice that is required for statute of limitations analysis. See In re Estate of Delaney, 819 A.2d at 982 (holding that knowledge of specific legal remedy not necessary for notice). Plaintiffs had three years from that date to pursue their suspicions, but they failed to do so.

one or both of her children.  See Compl. ¶¶ 18-19; see also Valley Title Mot., Ex. 1 at 127

(Deposition of Talmadge Hancock).  That fact, combined with being in possession of the Deed

of Trust and other loan documents, put plaintiffs in possession of all the facts necessary to

constitute notice of the DCCPA claim.  Because plaintiffs knew or should have known of this

injury after receiving the documents in January 1999, the statute of limitations expired no later

than January 2002, well before their Complaint in this case was filed in the Superior Court on

January 6, 2005.

b.  Claims that Assume the Validity of the Signatures

Plaintiffs also present arguments with respect to Counts I, II, and IV that are

premised on the fact that signatures were not forged.  Plaintiffs conversion claim under the

DCCPA, D.C. Code § 28-3904(e), (f), see Compl. ¶ 79 (Count I),[6] and their common law

conversion claim, see id. ¶¶ 96-97 (Count IV) both require plaintiffs to accept that the loan was

properly consummated and the proceeds therefore were Carolyn Hancock's personal property;

otherwise, there could be no conversion.  See Equity Group v. Painewebber Inc., 839 F. Supp.

930, 933 (D.D.C. 1993) (citing O'Callaghan v. District of Columbia, 741 F. Supp. 273, 279

(D.D.C. 1990)) (for there to be a conversion, plaintiffs must show the properly allegedly

converted was, in fact, their personal property).[7]  Plaintiffs' common law fraud claim against

---

[6]     The Court will assume for purposes of this analysis that a provision of the
DCCPA is in fact a conversion statute, although that is not self-evident from a reading of the
statute.

[7]     The facts underlying plaintiffs' DCCPA conversion claim appear to rest on the
same underlying allegations as their common law conversion claim.  See Compl. ¶¶ 79, 96.
Plaintiffs common law conversion claim alleges that "any funds obtained by Valley Title . . .
from the closing, or in subsequent interest payments, were the specific, identifiable property of
Carolyn E. Hancock at the time of closing."  Id. ¶ 96.  According to the HUD-1 form, Valley
Title received $1,120 in fees from the loan.  See Super. Ct. Mot. PI Ex. D (HUD-1 form). In

14

Valley Title, see Compl. ¶¶ 83-84 (Count II), also requires plaintiffs to accept the validity of the loan.[8]  The Court will treat these as arguments made in the alternative.

Assuming the validity of the loan in considering the claims set forth in Counts I, II and IV, the Court must determine when plaintiffs or Carolyn Hancock had actual or inquiry notice of these claims.  Plaintiffs allege that Carolyn Hancock failed to receive over $3,300 in proceeds from her loan as a result of Valley Title's conversion and fraud.  See Compl. ¶ 79 (alleging conversion of settlement funds of $1,120), ¶ 96 (alleging conversion of settlement funds of $1,120 plus subsequent interest payments), ¶ 83 (alleging fraud of $2,240.75).  By arguing that the statute of limitations did not begin to run on these claims until long after Carolyn Hancock's death, see Valley Title Opp. at 10, plaintiffs essentially argue that Carolyn Hancock either could not or should not have been aware that she had been deprived of over $3,300 at the time she received the loan proceeds, her debts were satisfied, and she began making payments on the loan.  See id. at 10-12.

The Court cannot find that Carolyn Hancock's alleged failure to receive a substantial portion of her loan proceeds is the kind of "obscure" fact that the discovery rule was meant to address.  See Morton v. National Med. Enters., 725 A.2d 462, 468 (D.C. 1999)

---

order to allege that defendant Valley Title improperly converted these loan proceeds, plaintiffs must accept the fact that the signatures were those of Carolyn Hancock, and that the loan proceeds were the personal property of Carolyn Hancock.

[8]     Plaintiffs' common law fraud claim (Count II) is based on defendant Valley Title's alleged misrepresentation "that it was disbursing a check in the amount of $2,240 to ANB" and another check to "The Associates" for $2,240.75.  See Compl. ¶ 83-84.  Plaintiffs allege that ANB and The Associates were the same company, and that Valley Title was the "last known custodian" of this extra payment of $2,240.  See id. ¶¶ 39-44.  Plaintiffs' common law fraud claim therefore necessarily presupposes that the signatures on the loan documents were those of Carolyn Hancock, that the loan was valid, and that Carolyn Hancock was defrauded of $2,240.75 that was rightfully hers.  See id. ¶ 83.

("However, in cases where the relationship between the fact of injury and the alleged tortious conduct is obscure when the injury occurs, we apply a 'discovery rule' to determine when the statute of limitations commences.") (citing <u>Bussineau v. President and Dirs. of Georgetown Coll.</u>, 518 A.2d at 425).  Rather, the Court concludes that Carolyn Hancock had actual notice of the facts and injury underlying the conversion claims set forth in Counts I and IV and the common law fraud claim in Count II in or around October 1994, when she received the loan proceeds, her debts were satisfied, and she began making payments on the loan.  The statute of limitations on these claims expired in October 1997, <u>see</u> D.C. CODE § 12-301(3), (8), and these claims therefore are time-barred.

Because the claims brought in Counts I, II, IV, and VII all are time-barred, the Court grants defendants Valley Title and Barry Blank's motion for summary judgment on those counts.

> 2.   Count VIII: Conspiracy to Defraud; Count IX: Aiding and
>       Abetting the Defrauding of Carolyn Hancock

Plaintiffs allege in Count VIII that defendants Valley Title and Barry Blank conspired to defraud Carolyn Hancock.  <u>See</u> Compl. ¶¶ 135-139.  In order to prove civil conspiracy, plaintiffs must show "'(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme.'"  <u>Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.</u>, 749 A.2d 724, 738 (D.C. 2000) (citing <u>Griva v. Davison</u>, 637 A.2d 830, 848 (D.C. 1994)); <u>see</u> <u>Brady v. Livingood</u>, 360 F. Supp. 2d 94, 104 (D.D.C. 2004).  In the District of Columbia, "there is no recognized independent tort action for civil conspiracy . . . ."  <u>Executive Sandwich Shoppe,</u>

16

Inc. v. Carr Realty Corp., 749 A.2d at 738 (citing Waldon v. Covington, 415 A.2d 1070, 1074 n.

14 (D.C. 1980)).  Rather, "it is a means for establishing vicarious liability for the underlying

tort.'"  Id. (citing Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir 1983)).  As a result, "civil

conspiracy depends on performance of some underlying tortious act."  Id. (citing Halberstam v.

Welch, 705 F.2d at 479).

Because civil conspiracy depends on an actionable underlying tort, the statute of

limitations for plaintiffs' conspiracy claim is "established by the statute of limitations governing

the underlying tort," and begins to run when the plaintiff is on notice of the underlying injury.

Thomas v. News World Commc's, 681 F. Supp. 55, 73 (D.D.C. 1988) (notice of libel occurs at

the time of injury, and civil conspiracy statute of limitations begins to run at the time of notice).

As discussed above, plaintiffs' fraud claim is time-barred under D.C. Code Section 12-301(8).

Because plaintiffs' underlying fraud claim is time-barred, plaintiffs' civil conspiracy claim

against defendants Valley Title and Barry Blank -- a claim of conspiracy to defraud -- also is

time-barred.  The Court therefore grants Valley Title and Barry Blank's motion for summary

judgment on Count VIII.

Plaintiffs allege in Count IX that defendants Valley Title and Barry Blank aided

and abetted the defrauding of Carolyn Hancock.  See Compl. ¶¶ 128-134.  A defendant is made

vicariously liable for a third party's acts under an aiding and abetting theory when he "knows

that the other's conduct constitutes a breach of duty and gives substantial assistance or

encouragement to the other so to conduct himself . . . ."  Halberstam v. Welch, 705 F.2d at 477

(citing RESTATEMENT (SECOND) OF TORTS § 876 (1979)).  Like civil conspiracy, aiding and

abetting requires an underlying tortious act.  See Fischer v. Estate of Flax, 816 A.2d 1, 5 (D.C.

2003) ("Similarly, absent evidence that the attorney knew of wrongful conduct by the client and

rendered substantial assistance in committing it, he cannot be held to be . . . an aider and abettor . . . of that conduct.").

The Court is aware of no District of Columbia or D.C. Circuit case directly addressing how to determine the statute of limitations for aiding and abetting claims. Nevertheless, regardless of whether aiding and abetting has the same statute of limitations as the alleged underlying tort -- in this case, fraud -- or whether it is governed by the District of Columbia's residual statue of limitations, the statute of limitations is the same -- three years.  See D.C. CODE § 12-301(8); Estate of Grant v. U.S. News & World Report, Inc., 639 F. Supp. 342, 348 (D.D.C. 1986) (Section 301(8) governs fraud claim).  Furthermore, there is persuasive authority from other jurisdictions that the statute of limitations for an aiding and abetting claim -- just as for a claim of civil conspiracy -- begins to run when plaintiff has notice of the underlying tort.  See, e.g., Wolff v. UBS Painewebber, 01 Civ. 0439, 2004 U.S. Dist LEXIS 8305, *4 (S.D.N.Y. May 12, 2004) (determination of whether aiding and abetting statute of limitations has expired depends on court's determination of when plaintiff had inquiry notice of underlying injury); River Colony Estates General Partnership v. Bayview Fin. Trading Group, Case No. 01-1420-IEG, 2003 U.S. Dist. LEXIS 23555, * 6-7 (S.D. Cal. Aug. 22, 2003) (same); Ackerman v. National Property Analysts, 887 F. Supp. 494, 508 (S.D.N.Y. 1992) (same). Because plaintiffs' underlying substantive fraud claim is time-barred by the three-year statute of limitations, their aiding and abetting claim also is time-barred.  The Court therefore grants defendants Valley Title and Barry Blank's motion for summary judgment on Count IX.

### D.  Plaintiffs' Claims against HomEq and Bank of New York

1.  Count XI: Derivative Claims Against HomEq and Bank of New York

Plaintiffs assert against HomEq and Bank of New York "all claims and defenses they have asserted in the preceding counts of [their] complaint against Bankers First . . . ." Compl. ¶ 147.  Among those claims and defenses, plaintiffs allege violations of the DCCPA, common law conversion, breach of fiduciary duty, conspiracy to defraud, and aiding and abetting the defrauding of Carolyn Hancock.  See id.  Plaintiffs' DCCPA, common law conversion, and breach of fiduciary duty claims against HomEq and Bank of New York are substantially the same as those brought against Valley Title.  See Compl. ¶¶ 79 (DCCPA violations); ¶¶ 96-97 (common law conversion); ¶¶ 114-120 (breach of fiduciary duty). Plaintiffs' conspiracy and aiding and abetting claims against HomEq and Bank of New York also are identical to their claims against Valley Title and Barry Blank.  See id. ¶¶ 128-134 (conspiracy to defraud); ¶¶ 135-139 (aiding and abetting).  The Court therefore will grant HomEq and Bank of New York's motion for summary judgment on those claims for the reasons discussed above.  Each of those claims is time-barred.  The remaining aspects of Count XI are discussed below.

a.  Count XI: D.C. Code §§ 28-3808, 3809 and 16 C.F.R. § 433.2

In Count XI, plaintiffs request damages against HomeEq and Bank of New York "[i]n accordance with the requirements of D.C. Code § 28-3808 and 3809. . . ."  Compl. ¶ 146. Such damages are not available to plaintiffs as a matter of law for two reasons.  First, neither section of the D.C. Code permits the award of damages.  See D.C. CODE § 28-3808(b);

§ 28-3809(b). [9]  Second, neither section of the Code is applicable to the loan in question.  D.C.

Code § 28-3808 concerns only "consumer credit sales," as defined by D.C. Code § 28-3802.

Section 28-3802 reads in relevant part: "As used in this chapter . . . 'consumer credit sale' means

a sale of goods or services in which . . . the amount financed does not exceed $ 25,000."  D.C.

Code § 28-3802(2)(E).  Because the loan at issue exceeds $25,000, this section of the D.C. Code

is not applicable as a matter of law.

Similarly, D.C. Code § 28-3809 applies only to "direct installment loans," which

also are defined in Section 28-3802: "[D]irect installment loan" means a direct installment loan

as that term is used in section 28-3308 and *does not include a loan secured on real estate . . . .*"

D.C. CODE § 28-3809(3) (emphasis added).  Because the loan at issue here was secured on real

estate, Section 28-3809 is inapplicable as a matter of law.  HomEq and Bank of New York's

motion for summary judgment on plaintiffs' derivative claims based on D.C. Code §§ 28-3808-

28:3809 therefore is granted.

In Count XI, plaintiffs also allege a violation of 16 C.F.R. § 433.2, the FTC

"Holder Rule."  This Rule "makes it an "unfair or deceptive act or practice" for a seller to "take

or receive a consumer credit contract which fails to contain the following provision in at least ten

point, bold face type":

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT
CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES
WHICH THE DEBTOR COULD ASSERT AGAINST THE

---

[9]        Under D.C. Code  § 28-3808(b), "[r]ights of the consumer or lessee can only be
asserted as a matter of defense to or set-off against a claim by the assignee."  Similarly, under
D.C. Code § 28-3809(b) "[t]he lender's liability under this section may not exceed the amount of
the loan. Rights of the debtor can only be asserted affirmatively in an action to cancel and void
the sale from its inception, or as a matter of defense to or set-off against a claim by the lender."

SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2.

This claim also must be dismissed as a matter of law for two reasons.  First, the Holder Rule "does not provide a remedy as a matter of law."  Johnson v. Long Beach Mortgage Loan Trust, 451 F. Supp. 2d 16, 55 n.20 (D.D.C. 2006) (quoting Jackson v. Culinary School of Wash., 78 F. Supp. 1233, 1249 (D.D.C. 1992)); see also Abel v. KeyBank USA, N.A., Civil Action No. 03-524, 2003 U.S. Dist. LEXIS 27175 (D. Ohio Sept. 24, 2003).  As the court said in Williams v. Nat'l Sch. of Health Tech., 836 F. Supp. 273, 283 (D. Pa. 1993):  "The rule does not afford plaintiffs any relief and does not grant private parties a cause of action for the failure to include the notice. Enforcement of the Federal Trade Commission Act and therefore the FTC Holder Rule is left to the FTC."

Second, by its terms, the Holder Rule is not applicable to the mortgage loan in question.  See Johnson v. Long Beach Mortgage Loan Trust, 451 F. Supp. 2d at 54-55.  A "consumer credit contract" is defined in the regulations as either a "purchase money loan," or a "financed sale."  16 C.F.R. § 433.1(I).[10]  The mortgage loan obtained by Carolyn Hancock does

---

[10]     A "purchase money loan" is defined as "a cash advance which is received by a consumer in return for a 'Finance Charge'. . ., which is applied, in whole or substantial part, to a purchase of goods or services from a seller who (1) refers consumers to the creditor or (2) is affiliated with the creditor by common control, contract, or business arrangement."  16 C.F.R. § 433.1(d).

A "financed sale" is defined as the extension of "credit to a consumer in connection with a 'Credit Sale' within the meaning of the Truth in Lending Act and Regulation Z."  16 C.F.R. § 433.1(e).  A "Credit Sale" is in turn defined by the Truth in Lending Act as

any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee

not fall within either category as defined by the Code of Federal Regulations.  See Johnson v. Long Beach Mortgage Loan Trust, 451 F. Supp. 2d at 55 (finding the Holder Rule inapplicable to a similar mortgage transaction).  Because the FTC Holder Rule is inapplicable to Carolyn Hancock's mortgage loan and because it does not provide plaintiffs with a remedy, defendants' motion for summary judgment on this aspect of plaintiffs Count XI claim therefore is granted.

> b.  Count XI: "Reasserting" Count III:  Violation of the D.C. Usury Statute
> and  Count V: Violation of the D.C. Mortgage Lenders and Brokers Act.

In Count XI, plaintiffs also "reassert" against HomeEq and Bank of New York the following claims brought against Bankers First Mortgage: Count III, violation of the District of Columbia's usury statute, see Compl. ¶¶ 87-93; and Count V, alleging violations of the District of Columbia Mortgage Lenders and Brokers Act.  See id. ¶¶ 101-113.  Because the statute of limitations has expired with regard to both of these claims, the Court grants plaintiffs' motion for summary judgment as to each Count.

Plaintiffs allege that defendants violated the D.C. usury statute, D.C. Code § 28-3301, et seq., by failing to provide certain disclosures required under the Truth in Lending Act ("TILA").  See D.C. CODE § 28-3301(f)(3) (requiring compliance with TILA disclosure requirements).  Plaintiffs request a return of all interest paid, reasonable attorneys' fees, and actual and punitive damages.  See Compl. ¶ 93.  The general statute of limitations statute, D.C.

---

> contracts to pay as compensation for use a sum substantially
> or in excess of the aggregate value of the property and services
> involved and it is agreed that the bailee or lessee will become, or
> for no other or a nominal consideration has the option to become,
> the owner of the property upon full compliance with his obligations
> under the contract.

15 U.S.C. § 1602(g).  Regulation Z provides substantially the same definition for "Credit Sale." See 12 C.F.R. § 226.2(a)(16).

Code § 12-301, does not govern this claim because the D.C. usury statute has its own one-year

statute of limitations on claims for payment of interest above the statutorily prescribed limit.  See

D.C. CODE § 28-3304.

        With respect to the Truth in Lending Act portion of Count XI, the D.C. Code is

silent with respect to the appropriate statute of limitations.  Nevertheless, whether the statute of

limitations for failure to make TILA disclosures is governed by the District of Columbia's

residual three-year statute of limitations, or by the D.C. usury statute's one-year statute of

limitations, or by TILA's own one-year statute of limitations for actions for damages, the

plaintiffs' claim is time-barred.  See 15 U.S.C. § 1631(e) ("Any action under this section may be

brought in any United States district court, or in any other court of competent jurisdiction, within

one year from the date of the occurrence of the violation.").  Because TILA's statute of

imitations expressly is stated to begin to run on "the date of the occurrence of the violation," 15

U.S.C. § 1631(e), the language of the statute suggests that the discovery rule is inapplicable.

Even assuming that the discovery rule did apply to this claim, plaintiffs' claim still is time-

barred.  As with plaintiffs' claims discussed above, the Court concludes that Carolyn Hancock

was on notice of this claim at the time the loan was consummated, she received the loan

proceeds, her debts were satisfied, and she began making payments on the loan.  Thus, the Court

concludes that Carolyn Hancock had notice of this claim in October 1994, and the claim

therefore was time-barred no later than October 1997.  See D.C. CODE § 12-301(8) .[11]

---

[11]      To the extent that plaintiffs are seeking rescission of the contract (rather than damages) on the basis of TILA, see HomEq Opp. at 14, that claim is governed either by the D.C. residual statute of limitations of three years, D.C. Code  § 12-301(8), or by TILA's own three-year statute of limitations for actions for rescission.  See 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction . . . notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter . . . have not been delivered to the obligor . . . .").  Under

In Count V, plaintiffs allege that Bankers First violated the D.C. Mortgage Lenders and Brokers Act, D.C. Code § 26-1001, et seq.  See Compl. ¶ 101.[12]  Plaintiffs allege that Bankers First held itself out as a mortgage broker in the District of Columbia in violation of section 26-1103, it executed the loan in the District of Columbia in violation of Section 26-1104(f)(1), and it failed to provide a financing agreement to Carolyn Hancock at least 72 hours prior to settlement in violation of Section 26-1113.  See Compl. ¶¶ 107-110.  These claims, brought derivatively against HomeEq and Bank of New York, are all subject to the District of Columbia's three-year residual statute of limitations.  D.C. CODE § 12-301(8).  For the reasons discussed above, the Court concludes that Carolyn Hancock had notice of this claim in October 1994, when she received the benefits of the loan and began to make payments.

## 2.  Count X: Request for Injunctive and Declaratory Relief

Finally, plaintiffs request injunctive and declaratory relief against HomeEq and Bank of New York, enjoining the foreclosure of the property subject to the Deed of Trust.  See Compl. ¶¶ 140-144.  As discussed above, the Court finds that plaintiffs cannot prevail on the merits of their substantive claims because the statute of limitations has expired for each claim.  If the statute of limitations bars a claim for damages, it also bars a request for injunctive and declaratory relief.

---

either standard, the statute of limitations is three years.  Furthermore, the Supreme Court has expressly held Section 1635(f) prohibits application of the discovery rule.  See Beach v. Ocwen Federal Bank, 523 U.S. 410, 417 (1998). In other words, TILA governs not the statute of limitations, but the duration of the right to bring suit, regardless of when the plaintiff could have or should have discovered the injury.  See id. at 417 ("Section 1635(f) . . . govern[s] the life of the underlying right . . . .").  The TILA claim therefore expired three years from the consummation of the loan, whether or not Carolyn Hancock or plaintiffs were on notice.

[12]     As noted, supra, note 3, Bankers First has never been served in this case.

III. CONCLUSION

For the reasons explained in this Opinion, the Court has granted the defendants'

motions for summary judgment and entered judgment for defendants on all counts.  An Order

and Judgment consistent with this Opinion was issued on March 30, 2007.


                                            /s/_____
                                            PAUL L. FRIEDMAN
DATE:  April 27, 2007                       United States District Judge